UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
In re:

CONTINENTAL BROKER-DEALER CORP.,

Debtor.

Case No.: 04-85318-JBR
Chapter 7
---------------------------------------------------x
RICHARD L. STERN, as Chapter 7 Trustee of CONTINENTAL BROKER-DEALER CORP.,

Plaintiff,

Adv. Pro. No.: 806-08370-JBR

-against-

M. CARLETON BOOTHE ,

Defendant.
---------------------------------------------------x

APPEARANCES:

ZEICHNER ELLMAN & KRAUSE , LLP
BY: NATHAN SCHWED, ESQ.
Attorney for Plaintiff, Richard L. Stern as Chapter 7
Trustee of the estate of Continental Broker-Dealer Corp.
575 Lexington Avenue
New York, New York 10022

WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
BY: JEFFREY L WILSON, ESQ.
Attorney for Defendant, M. Carleton Boothe
150 East 42nd Street
New York, New York 10017

**MEMORANDUM DECISION AND ORDER ON MOTION OF PLAINTIFF FOR**

**SUMMARY JUDGMENT [#9-11] AND CROSS MOTION OF DEFENDANT SEEKING: (I) DENIAL OF SUMMARY JUDGMENT; (II) DISMISSAL OF ALL CLAIMS AGAINST DEFENDANT; AND (III) COMPELLING ARBITRATION OF ANY REMAINING ISSUES IF ANY (#15-18)**

HON. JOEL B. ROSENTHAL, United States Bankruptcy Judge:

This matter came before the Court for hearing (the "Hearing"), on the Motion of Plaintiff, Richard L. Stern as Chapter 7 Trustee of the estate of Continental Broker-Dealer Corp. ("Plaintiff" or the "Trustee") for Summary Judgment [#9] to which the Defendant M. Carleton Boothe ("Defendant" or "Boothe") objected [# 15-18], and on the Motion of Defendant (the "Motion") seeking: (i) denial of summary judgment; (ii) dismissal of all claims against Defendant; and (iii) compelling arbitration of any remaining issues if any [#15- 18] to which the Plaintiff objected [#19-23]. Various other responses and oppositions to the respective motions are reflected on the Court's docket.

At the conclusion of the Hearing the Court denied the Trustee's motion for Summary Judgment and that portion of Defendant's Motion seeking dismissal of the adversary proceeding. The Court took under submission Defendant's request to compel arbitration. As set forth more fully below, the Court will compel arbitration before the National Association of Securities Dealers[1] ("NASD") to determine the issues raised in the adversary proceeding and to fix the amount of damages, if any.

**BACKGROUND**

[1]The NASD is a self-regulating organization of securities dealers created under the authority of the U.S. Securities and Exchange Commission. Prior to the instant summary judgment motions, Defendant had sought arbitration before the NASD of these issues.

Defendant began employment with the Debtor, a member of the NASD, in 1992 and became an "associated person of a member" of the NASD[2]. Sometime during 2000 the Debtor and Boothe discussed Boothe's relocating to Boca Raton, Florida to work at the Debtor's office there. Defendant and the Debtor then entered into a "Sales Representative Association Agreement" (the "Agreement"). Pursuant to the Agreement the Debtor transferred $300,000 to Defendant: a payment of $150,000 on September 11, 2000 and an additional payment of $150,000 on October 4, 2000. Pursuant to paragraph 3 of the Agreement Defendant was to repay some or all of the $300,000[3] if his employment terminated within 5 years for any reason other than his death or disability.

The Defendant completed approximately 3½ years of employment under the Agreement and resigned in January 2004. In June 2004, following an investigation by the NASD and the U.S. Securities and Exchange Commission, the Debtor was expelled from the securities industry. The parties substantially differ on the circumstances precipitating the Defendant's resignation prior to the expiration of the 5 year period and dispute each others' obligations under the Agreement. Also Defendant contends that subsequent to the execution of the Agreement, for separate and additional consideration, he was released by the Debtor from any further obligations

[2]The NASD defines an associated person as "any person engaged in the investment banking or securities business who is directly or indirectly controlled by an NASD member, whether or not they are registered or exempt from registration with NASD. An associated person includes, but is not limited to, every sole proprietor, partner, officer, director, or branch manager of any NASD member." NASD Glossary of Arbitration Terms.

[3]The parties disagree as to whether the Agreement calls for the entire $300,000 or only 10% of that amount to be repaid. Their disagreement is irrelevant to the issue presently before the Court.

under the Agreement[4].

**DISCUSSION**

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., a federal court is required to enforce arbitration agreements and to stay litigation that contravenes them. *See* 9 U.S.C. §§ 2 & 3. The FAA affords no latitude for discretion. S*ee Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Although "the FAA does not require parties to arbitrate when they have not agreed to do so," *Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), arbitration is indicated unless it can be said "with positive assurance" that an arbitration clause is not susceptible to an interpretation that covers the asserted dispute. *Thomas James Assocs., Inc. v. Jameson*, 102 F.3d 60, 65 (2d Cir.1996).

The threshold inquiries under the FAA are whether under recognized principles of contract law the arbitration agreement is valid, and if so, are the parties bound by the agreement. First Plaintiff[5] alleges that paragraph 5 of the Agreement which addresses remedies including arbitration specifically excludes claims under paragraph 3 (compensation) and 4 (customer records) from those claims that must be arbitrated before the NASD. Plaintiff's interpretation belies a fundamental misunderstanding of the relationship between the various parties and their independent obligations to arbitrate certain disputes, such as the one here, under the NASD's Code of Arbitration

[4]The Complaint also included a claim for indemnification, which the Trustee is not pursuing

[5]The Trustee is the legal representative of the bankruptcy estate. As such he steps into the shoes of the Debtor. Thus, if the Debtor could be compelled to arbitrate, so too can the Trustee be compelled. *See* 11 U.S.C. § 323. *See also In re Mercurio*, 402 F.3d 62 (1st Cir. 2005) (holding that a Chapter 11 Trustee stood in debtor's shoes and could no more avoid arbitration in a contractually agreed forum, based simply on showing of inconvenience, than could debtor.)

Procedure (the "NASD Code").

By becoming a member of the NASD the Debtor agreed with the NASD to be bound by the rules and regulations of the association, including the NASD Code. Similarly, the Defendant upon accepting employment with an NASD member became as an associated person of a member and agreed with the NASD to be bound by the regulations of the association, including the NASD Code[6]. It is important to understand this distinction; these agreements were not between the Debtor and the Boothe, rather these were separate agreements that each party entered into directly with the NASD long before the Agreement herein was undertaken. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 n. 2, 111 S.Ct. 1647, 1651 n. 2, 114 L.Ed.2d 26. (1985) (explaining that the NASD's Form U-4 agreement, signed by employees in the securities industry, is more correctly understood as an agreement between the signatory and the NASD). Even if the parties intended to waive these requirement, they did not have the right to waive it as such a waiver violates public policy. *See Thomas James Associates, Inc. v. Jameson*, 102 F.3d 60 (2d Cir. 1996)(citing to the NASD Code in holding that when a self-regulatory association of securities firms, such as the NASD, under direct federal supervision by the Securities and Exchange Commission, ordains that

---

[6] As noted by the *Beard* Court,

> Numerous courts have indicated that an individual is bound by the arbitration provision contained in the NASD regulations if they join the NASD, even though they have no direct agreement to arbitrate with a covered third party. *See e.g., First Liberty Group v. Nicholsberg*, 145 F.3d 647, 653 (3d Cir.1998) (stating that each member of NASD is contractually bound by its regulations-including all of its arbitration provisions); *Paul Revere Variable Annuity Ins. Co. v. Zang*, 81 F. Supp.2d 227, 234 (D.Mass.2000), *affd*. by 226 F.3d 15 (1st Cir.2000).

*Beard* , 2001 WL 1231003, 3.

its members may not require their employees to waive arbitration rights, it is inappropriate for a court to enforce such a waiver). *See also Qadri v. PointDirex, L.L.C.*, 823 So.2d 861, 863-864 (Fla.App. 5 Dist. 2002) (holding that the NASD Manual Code of Arbitration Procedure which makes it improper for NASD members to require their employees to waive their rights to arbitration.) Accordingly, the Court rejects the argument by Plaintiff that this that provision of the Agreement constitutes a waiver of the parties right to arbitrate before the NASD.

Plaintiff argues that regardless of any agreement this dispute is still not subject to NASD arbitration since the Debtor is a former member no longer subject to the NASD Code[7] which he claims only applies to current members. Defendant contends that the Court must allow the NASD arbitration to proceed as the NASD's Code is applicable because membership status for purposes of determining application of the NASD Code must be determined at the time of the events giving rise to the dispute occurred. Defendant cites to an Eleventh Circuit decision in support of this result, *Riccard v. Prudential Ins. Co.* 307 F.3d 1277 (11th Cir. 2002). This Court agrees with the

[7]Rules 10101 and 10201 of the NASD's Code of Arbitration Procedure make employment disputes between a member firm and an "associated person," such as the Defendant, subject to arbitration by the NASD at the behest of an NASD member. Rule 10201(a), Code, which sets forth the claims that are required to be arbitrated, states in pertinent part that:

> ...a dispute, claim or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons . . . or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of: (1) a member against another member; (2) a member against a person associated with a member or a person associated with a member against a member; and (3) a person associated with a member against a person associated with a member.

National Association of Securities Dealers, Code of Arbitration Procedure, Rule 10201(a).

holding of the Eleventh Circuit that Debtor's status as an NASD member, for the purpose of determining the applicability of the NASD's Code, should be determined at the time of the events leading to the dispute or claim or when the dispute or claim arose. As stated by the Eleventh Circuit,

> [w]e think the key is that the rule explicitly includes among the claims, disputes, and controversies subject to mandatory arbitration those between a member and associated person "arising out of the ... termination of employment of such associated person(s) with such member." That indicates to us that the status of association with a member must be determined at the time of the events giving rise to the dispute or claim. If not, a termination of employment could never be arbitrated, because from the time the termination occurred the employee (no longer controlled by his employer) would no longer be a person associated with a member. This would defeat the rule's clear intent that termination of employment claims be subject to mandatory arbitration after an employee is terminated. Of course, the question here is when [the former members] membership status is to be judged, but we do not see why the NASD rule would make associated person status count to enable insistence on arbitration if that status existed at time of the events (such as a termination of employment) giving rise to the dispute or claim, but not make membership count if membership existed at that same time.

*Id.* at 1288. The *Riccard* decision was recently cited with approval by the New York Southern District Court in *Beer v. Nutt*, 2007 WL 13100 (S.D.N.Y. Jan. 3, 2007)(No. 06 Civ. 9424).

The United States District Court for the Western District of Missouri also addressed and rejected the argument that NASD status is determined at the time suit was filed, writing

> if the Court were to evaluate Beard's status under NASD regulations at the time the lawsuit was initiated, it would allow plaintiffs like Beard to avoid the mandatory arbitration provision of the NASD regulations simply by canceling their membership with NASD prior to filing suit for their grievances. Such action would thwart the mandatory arbitration provision of the NASD regulations.
>
> Furthermore, the language of the Code of Arbitration Procedure suggests that the Code contemplates suits by former associated members. Rule 10216(f) provides in relevant part that "[i]f a member or a current or former associated person of a member files in court a

> claim against a member or a current or former associated person of a member that includes matters that are subject to mandatory arbitration, either by the rules of the association or by private agreement, the defending party may move to compel arbitration of the claims that are subject to mandatory arbitration" (emphasis added). Also, Rule 10101 and Rule 10201 of the NASD Code of Arbitration Procedures both refer to arbitration being available or mandatory in disputes "... arising out of the employment or termination of employment of associated person[s] with any member ...." Once an associated person is terminated, he would no longer be an associated person. Yet, the regulations suggest that arbitration is still available and under Rule 10201 mandatory.

*Beard v. American Exp. Financial Advisors, Inc.*, 2001 WL 1231003, 4-5, (W.D.Mo. July 19, 2001)(No. 01-4030-CV-C-5). This Court rejects Plaintiff's argument that under a literal reading of the NASD Code former members are not subject to the arbitration requirements of the NASD Code. This was the holding of the New York Western District Court in an unreported case, *Gaghich v. Prudential Ins. Co. of America*, 1997 WL 128269 (W.D.N.Y. 1997) cited by the Plaintiff. Given the language of the NASD Code of Arbitration Procedures, the Court finds that Rule 10201 mandates that the Debtor as a former member and Boothe as an associated person of a member must arbitrate their dispute before the NASD.

Finally, the Court rejects Plaintiff's argument that Boothe waived the right to arbitrate by submitting an Answer in the adversary proceeding and participating in discovery without asserting a right to arbitration. Boothe points out that he did not seek arbitration at the outset because the Complaint made no reference to the Agreement. While it is undisputed that Boothe did not initially seek arbitration, it is the Court's view that this proceeding has not so substantially proceeded as to prejudice any party were the Court to order that the parties arbitrate. *See Carcich v. Rederi A/B Nordie* 389 F.2d 692, 696 (2d Cir. 1968) (holding that there is an overriding federal policy favoring arbitration, and waiver of the right thereto is not to be lightly

inferred, and mere delay in seeking a stay of litigation without resultant prejudice to a party cannot be deemed a waiver). *See also American Exp. Financial Advisors, Inc. v. Zito,* 45 F. Supp.2d 230, 234 (E.D.N.Y. 1999) (because federal policy favors arbitration, a waiver of arbitration is not to be lightly inferred). Accordingly, Boothe has not waived his right to arbitrate by his limited participation in this adversary proceeding to date.

**CONCLUSION**

The parities to this adversary proceeding are both subject to the NASD Code which under the FFA requires that this dispute must be arbitrated before the NASD. Based on these findings and the applicable statutory and case law, the Motion is GRANTED IN PART and the Court hereby directs the parties to proceed with the arbitration before the NASD previously requested by the Defendant. Upon a final decision of the NASD arbiters the parties are directed to notify this Court in writing of same. Any party seeking to enforce an arbitration order shall seek appropriate relief in this Court.

So Ordered.

Dated: Central Islip, New York
May 9, 2007

***s/Joel B. Rosenthal***
Joel B. Rosenthal
U.S. Bankruptcy Judge